## ELEANOR THOMAS *v.* ERNEST ROSE
### (3800)

DUPONT, C.J., BORDEN and SPALLONE, Js.

Argued December 5, 1986—decision released March 3, 1987

*Daniel D. Skuret,* with whom, on the brief, was *Michael Moher,* for the appellant (defendant).

*Seymour P. Dunn,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellee (plaintiff).

DUPONT, C. J. This appeal concerns a paternity action in which, after a jury trial, the defendant was found to be the father of the plaintiff's baby. The defendant claims error in the trial court's rulings which barred

the introduction of evidence relating to the plaintiff's use of and addiction to heroin, and her conviction in 1972 of the felonies of possession of heroin and possession of heroin with intent to sell.

Certain dates are relevant to our decision. The baby was born on October 31, 1980. Conception was alleged to have occurred in early February, 1980. The jury returned its verdict on October 30, 1984.

The defendant attempted to introduce evidence of the felony convictions of the plaintiff to impeach her credibility and character. General Statutes § 52-145 (b) provides that convictions of a felony may be shown for the purpose of attacking the credibility of a witness. A trial court has the discretion to decide whether to admit such evidence, taking into account the extent of the prejudice likely to arise, the relationship of the particular crime to untruthfulness, and the remoteness in time of the conviction. *State* v. *Geyer,* 194 Conn. 1, 11, 480 A.2d 489 (1984); *State* v. *Roman,* 6 Conn. App. 189, 191, 504 A.2d 529 (1986).

Although a narcotics conviction reflects adversely on the character of the witness, it has no direct materiality to credibility. *State* v. *Roman,* supra. The convictions here occurred some twelve years prior to the plaintiff's testimony. "It is a rare prior conviction which is more than ten years old which retains the minimal probative value sufficient to overcome its prejudice." Id., 192. The conviction had minimal probative value in determining credibility, or in determining any issue in the case, it was remote in time to the testimony, and prejudicial. Even if the convictions are viewed as relevant to the general bad character of the plaintiff, they were not recent convictions, and showed little about the plaintiff's disposition to lie twelve years later. See *State* v. *Geyer,* supra, 12–13; C. Tait & J. LaPlante, Connecticut Evidence § 7.21. The trial court did not err in excluding evidence of the convictions.

The defendant also claims error in the failure of the trial court to allow into evidence various hospital and medical records, and records of the department of children and youth services (DCYS) which contained statements about the plaintiff's heroin addiction. The defendant sought to introduce the records to impeach the plaintiff's credibility and to show that her ability to recollect events and to testify accurately about them was impaired because of the drug addiction which caused her "at different times" to be "disoriented and unable to function." The ten exhibits marked for identification are filled with references to the plaintiff's drug addiction and indicate that she was addicted to heroin at the time the baby was born and that the baby was born also addicted to heroin.

The defendant's basic claim is that the use of heroin so clouded the plaintiff's cognitive abilities that she could not clearly remember the period during which conception occurred and therefore could not testify to those events accurately at the time of the trial. The hospital and medical records are dated August 19, 1979, June 12, 1980, October 31, 1980, March 30, 1981, September 23, 1981, November 6, 1981, and July 8, 1982. The DCYS records are dated April 2, 1982. No record relates to the early months of 1980 when conception must have occurred or to 1984 when the case was tried.

All of the records tell a graphic story of the plaintiff's life as blighted by an abuse of drugs, unwanted pregnancies, numerous suicide attempts, and an inability to care for her children. None, however, indicates that the memory or cognitive abilities of the plaintiff were impaired. The plaintiff's hospital record of August 19, 1979, contains the following references: "quite alert"; "cognition not impaired"; "memory for past and present events quite intact." All of the other medical records state that the patient could verbalize

an understanding of the physician's instructions, that she knew where she was, who she was, and the correct day, month and year. Many of the records describe her as "alert, oriented and cooperative." No record contains any statement relevant to her credibility.

The only statement in any exhibit remotely relating to mental impairment is a statement in a DCYS summary of facts dated April 2, 1982. That statement is one attributed to the plaintiff in which she says she was disoriented as to whether it was night or day. The social worker follows the statement by noting that once, when the plaintiff was telephoned at 2:15 p.m., she was still in bed, and that on another occasion the plaintiff said she gave her children supper at 10 p.m. Even if the plaintiff's statements are indicative of a clouded mind, there is no indication as to when they were made.

No medical testimony was offered to show that her heroin addiction impaired her ability to recall events and nothing in the exhibits would lead to that conclusion. On the contrary, the plaintiff gave data, according to the hospital admission records, with appropriate consistency when the admitting data sheets are compared, and with appropriate changes of fact, such as the ages of her children. Also, informed consents to operative procedures were obtained from her by the hospital.

This case is unlike those cases in which evidence of alcohol abuse was allowed into evidence, without medical testimony as to the effects of alcohol on mental or physical ability, to show the condition of a particular person at a particular time. Whether a person was under the influence of alcohol and the effects of that influence at the time of an event in question are for the jury's determination from the facts presented, since the effect of consuming alcohol is a matter of common knowledge for which no expert opinion is necessary.

*Way* v. *Pavent,* 179 Conn. 377, 380, 426 A.2d 780 (1979); *State* v. *Heinz,* 3 Conn. App. 80, 86, 485 A.2d 1321 (1984).

If the question to be resolved were whether the plaintiff was a heroin addict, the exhibits might be admissible. The question here, however, is whether the fact that the plaintiff was addicted to heroin, as of the dates of some of the exhibits, interfered with her ability to recall events in the early months of 1980. None of the exhibits relates to this time period, and none of them, before or after that time span, is probative of an inability to observe correctly or recall events accurately. In fact they are probative of the reverse.[1]

The defendant's last claim of error relates to his offer of proof of the testimony of a DCYS social worker. He sought to introduce her testimony in order to challenge the credibility and the ability of the plaintiff to remember and accurately relate events of 1980. That testimony would have been that the plaintiff was addicted to heroin in 1982, that she was hospitalized in November, 1981, with hepatitis "probably due to contact with an infected hypodermic needle" and that she was an unfit mother. None of the testimony related to 1980 and it was not probative of the plaintiff's credibility in 1984 or of her ability accurately to remember events of 1980. Upon review of the transcripts which contain the complete testimony presented during that offer of proof, we conclude that the trial court was correct in not allowing any testimony of the social worker relating to the plaintiff's addiction to be heard by the jury.

There is no error.

In this opinion the other judges concurred.

---

[1] A compilation of cases dealing with the admissibility of evidence of drug use to impeach the testimony of witnesses may be found in the article "Use of Drugs as Affecting Competency or Credibility of a Witness," annot., 65 A.L.R.3d 705.